# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

William O.,

               Plaintiff(s),

vs.

Martin O'Malley, Commissioner of Social Security,

               Defendant(s).

2:25-cv-00363-MDC

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND (ECF NO. 12)**

Pro se plaintiff William O. filed a *Motion for Remand* ("Motion") regarding the Administrative Law Judge's ("ALJ") final decision denying his social security benefits. *ECF No. 12*. The Court the DENIES Motion.

## I.  BACKGROUND

### A.  Summary of the Case

Plaintiff filed an application for supplemental security income on October 4, 2021, alleging disability commencing on October 21, 2020. *AR 239–46*. The Commissioner of Social Security denied the claim by initial determination on February 4, 2022. *AR 134–42*. Plaintiff requested reconsideration of the initial determination on April 15, 2022. *AR 161–64*. The Commissioner denied reconsideration on January 5, 2023. *AR 144–51*. Plaintiff requested a de novo hearing before an ALJ on March 6, 2023. *AR 176*. The ALJ conducted the oral hearing on January 18, 2024. *AR 82–115*. The ALJ published an unfavorable decision on February 28, 2024. *AR 34–53*.

Plaintiff requested that the Appeals Council review the ALJ's decision on April 8, 2024. *AR 236–38*. The Appeals Council denied the request for review on January 13, 2025. *AR 1–6*. On that date, the ALJ decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). This timely civil action followed. The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. § 1383(c).

### B. Summary of the ALJ's Decision

The ALJ used the five-step sequential evaluation process to guide the decision. 20 C.F.R. § 416.920. At step one, the ALJ agreed that plaintiff did not engage in substantial gainful activity since October 21, 2020. *AR 39, ¶ 1*. At step two, the ALJ found that plaintiff suffered from medically determinable severe schizophrenia and substance abuse. *AR 39, ¶ 2*. At step three, the ALJ determined that, including the substance abuse, plaintiff's impairments met the criteria of Listing 12.02. *AR 41, ¶ 3 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1)*. Excluding the substance abuse, the ALJ decided that the impairments did not meet or equal any "listed" impairment. *AR 43, ¶ 5* (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). Absent substance use, the ALJ assessed plaintiff as retaining the residual functional capacity ("RFC") to perform the demands of

> a full range of work at all exertional levels but with the following nonexertional limitations: he could not climb ladders, ropes, or scaffolds; he could not work at unprotected heights or operate moving mechanical parts; he could perform unskilled work tasks, occasionally interact with coworkers and members of the public, and make simple work-related decisions.

*AR 44, ¶ 6*.

At step four, the ALJ determined plaintiff can perform past relevant work. *AR 46, ¶ 7*. The ALJ also made an alternative step five finding. The ALJ did not make an age finding. The ALJ categorized plaintiff as possessing at least a high school education. *AR 46, ¶ 8*. The ALJ treated the question of transferability of skills as immaterial. *AR 46, ¶ 9*. The ALJ adduced and accepted testimony of a vocational expert that if plaintiff stopped the substance use, and considering his age, education, work experience, and RFC, plaintiff could perform the work of laundry worker I (DOT 361.684-014), kitchen helper (DOT 318.687- 010), and day worker (DOT 301.687-014). *AR 47, ¶ 10*. The ALJ found that substance use disorder is a contributing factor material to the determination of disability and concluded that plaintiff did not suffer from a disability between October 21, 2020, and the date of the decision. *AR 47, ¶ 11*. Plaintiff stipulates that the ALJ reasonably summarized the medical evidence of the record.

### C.  Summary of the Vocational Evidence

At the hearing, the ALJ instructed the vocational witness to assume a hypothetical individual of plaintiff's age and education with the following limitations:

> This individual could not climb ladders, ropes, or scaffolds. He cannot work at unprotected heights or operate moving, mechanical parts. He can perform unskilled tasks. He can occasionally interact with coworkers and never to the public, and he can make simple work-related decisions.

*AR 110*. The vocational witness testified the hypothetical individual could perform medium work in the national economy as a laundry worker I, representing 3,817 national jobs; kitchen helper, representing 120,152 national jobs; and day worker, representing 32,278 national jobs. *Id*. The ALJ adjusted the hypothetical:

> same limitations, but now we're at the medium exertional level, so now the individual can occasionally lift and carry 50 pounds, frequently 25, can sit, stand, excuse me, can sit, stand, and walk for six hours each in a typical eight hour day, and push and pull as much as he can lift and carry, and he can frequently stoop, kneel, crouch, and crawl.

*AR 111*. The vocational witness testified the hypothetical would still be able to perform the work previously identified. *Id*.

### D.  Summary of the Parties' Arguments

The plaintiff argues the ALJ's finding that he could perform past relevant work lacks the support of substantial evidence. *ECF No. 12 at 7*. The plaintiff also argues that the ALJ did not resolve the conflict arising from a limitation to unskilled work and the finding that he possesses at least a high school education. *Id. at 8*. The plaintiff also argues that the ALJ failed to identify and resolve an apparent conflict with the DOT. *Id. at 14*. Finally, the plaintiff argues that the ALJ did not articulate reasons supported by substantial evidence for rejecting the prior administrative medical findings. *Id. at 11*.

The Commissioner argues that the plaintiff's arguments really boil down to two main issues: (1) whether the ALJ reasonably characterized plaintiff's educational background and (2) whether the ALJ identified a significant number of jobs in the national economy that plaintiff could do. *ECF No. 14 at 2*. The Commissioner argues that the ALJ's finding that plaintiff could perform past relevant work was an inconsequential scrivener's error given that the ALJ also found at the hearing that plaintiff did not have past relevant work. *Id. at 3*. The Commissioner argues that the ALJ did reasonably characterize plaintiff's educational background. *Id. at 2*. The Commissioner also argues that the ALJ identified a significant number of jobs in the national economy that the plaintiff could do. *Id.*

## II. DISCUSSION

### A. Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security plaintiffs have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990).

At step five of the sequential evaluation process, the ALJ must evaluate the claimant's educational background. 20 C.F.R. §§ 416.920(a)(4)(v), 416.964. Absent evidence to the contrary, an ALJ "will use [a claimant's] numerical grade level to determine [their] educational abilities." 20 C.F.R. § 416.964(b). The ALJ bears the burden at step five to determine the claimant's education level. *Silveira v. Apfel*, 204 F.3d 1257, 1261–62 (9th Cir. 2000) reversed on other grounds 20 C.F.R. § 416.964(b) (finding the Commissioner bears the burden at step five to establish the claimant is literate).

The regulations describe how the Administration evaluates a claimant's education:

> Formal education that you completed many years before your impairment
> began, or unused skills and knowledge that were a part of your formal
> education, may no longer be useful or meaningful in terms of your ability to
> work. Therefore, the numerical grade level that you completed in school may

not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.

20 C.F.R. § 416.964(a)

The Dictionary of Occupational Titles ("DOT") defines kitchen helper:

**318.687-010 KITCHEN HELPER (hotel & rest.) alternate titles: cookee; cook helper; kitchen hand; kitchen porter; kitchen runner**
Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food.

See DOT 318.687-010 (kitchen helper) (4th Ed., Rev. 1991).

The DOT assigns kitchen helper to the hotel and restaurant industry. The DOT describes the hotel and restaurant industry:

This designation includes occupations concerned with providing and maintaining lodging, dining, and beverage services. Occupations are typically found in establishments such as commercial, residential, tourist, and club hotels; motels; apartment houses; trailer courts, tourist camps, and homes; rooming houses; restaurants, cafeterias, and lunch counters; industrial, institutional, and private catering services; taverns, cocktail lounges, night clubs, and tea rooms; boarding houses; and fraternity and sorority houses.

See DOT, Occupational Titles Arranged by Industry Designation (4th Ed., Rev. 1991).

The DOT defines day worker:

**301.687-014 DAY WORKER (domestic ser.)**
Performs any combination of following domestic duties: Cleans and dusts furnishings, hallways, and lavatories. Changes and makes beds. Washes and irons clothings by hand or machine. Vacuums carpets, using vacuum cleaner. May watch children to keep them out of mischief. May wash windows and wax and polish floors.

See DOT 301.687-014 (day worker) (4th Ed., Rev. 1991).

The DOT assigns day worker to the domestic service industry. The DOT describes the domestic service industry:

This designation includes occupations concerned with rendering services for members of households or their guests in or about private homes. Workers in these occupations are usually employees of the household. Workers who are employed by another establishment, but who perform their work in a private home, are included in other industries.

See DOT, Occupational Titles Arranged by Industry Designation (4th Ed., Rev. 1991).

"[H]armless error applies in the Social Security context." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). A decision will be upheld where the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citation and quotation marks omitted). If an issue "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is simply "more than a mere scintilla"; it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation omitted).

**B. Analysis**

    **a. The ALJ's Finding that Plaintiff Could Perform Past Relevant Work was a Harmless Error**

The ALJ found plaintiff could perform past relevant work. *AR 46, ¶ 7.* The ALJ, however, treated transferability of skills as immaterial because plaintiff "does not have past relevant work." *AR 46, ¶ 9.* At the hearing, he asked the vocational witness, "I didn't see anything regarding the work history in the record, did you?" *AR 109.* The vocational witness responded, "the only thing that I saw, I think, was what [plaintiff] had briefly mentioned, which was the line cook." *Id.* The ALJ noted that plaintiff performed that work "more than 15 years ago." *AR 109.* The record supports the lack of past relevant work. Plaintiff reported he last worked as a line cook in 2005 and 2009 in separate work history reports. *AR 329, 353.* Plaintiff had no earnings in 2009. *AR 259.* This Court rejects the ALJ's finding that plaintiff can perform past relevant work but finds that it is was harmless scrivener's error.

    **b. The ALJ Reasonably Characterized the Plaintiff's Educational Background**

The ALJ determined plaintiff, excluding substance abuse, retained the capacity for work at all exertional levels limited to unskilled work tasks and simple work-related decisions. *AR 44, ¶ 6.* The ALJ found plaintiff possessed at least a high school education. *AR 46, ¶ 8.* Plaintiff told the agency that he completed high school. *AR 288.* Plaintiff's attorney also admitted at the administrative hearing that he had a "12th grade education." *AR 86.* The ALJ found that plaintiff had "at least a high school education." *AR 46.*

Plaintiff does not dispute the "historical note that [he] has more than a high school education." *ECF No. 12 at 9.* Plaintiff argues that his "actual educational abilities are lower than his formal education level." *Id.* Plaintiff argues that a finding of a high school education conflicts with the finding of a limitation to simple unskilled work because plaintiff cannot access that reasoning, arithmetic, and language abilities beyond simple unskilled work. *Id.* Plaintiff argues that in *Zavalin v. Colvin,* the Ninth Circuit considered whether plaintiff's limitation to simple, routine work contradicted the finding that

plaintiff retained General Educational Development ("GED") Level 3 reasoning. 778 F.3d 842, 847 (9th Cir. 2015). The GED level is a determination of one's actual "ability" to apply rational thought and address complicated problems. *Id*. Education, on the other hand, is "primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements…" including reasoning, arithmetic, and language skills. C.F.R. § 416.964 (emphasis added). While education and RFC are related in the fifth step of analysis (20 CFR § 416.920(a)(4)(v)) and a high school education "generally" signifies a claimant "can do semi-skilled through skilled work" (20 CFR 404.1564(b)(4)), a claimant's RFC is determined "based on all of the relevant medical and other evidence." 20 CFR § 416.945(a)(3) (emphasis added).

The ALJ decided plaintiff's RFC after reviewing the entire record, including plaintiff's medical and function reports. *AR 44-46*. The Court finds that plaintiff could retain both a high school education and an RFC with limitations. Plaintiff's function report (AR 310-321) describes activities plaintiff engages in such as simple cooking, shopping, laundry, and karaoke in line with the ALJ's limitations. Plaintiff does not point to evidence that may contradict his education level aside from this alleged conflict. Plaintiff argues that his education may not actually reflect a high school level. The record indicates that plaintiff took special education courses during high school, which may be a factor relative to whether his education reached the typical 12th grade standard. *AR 60*; see *Zavalin*, 778 F.3d at 847 (Commissioner's reliance on claimant's completion of high school in determining GED was questionable where claimant took special education classes, had special accommodations, and graduated with a modified diploma.). That factor alone, however, is not reason to discard the ALJ's determination, particularly when the ALJ considered the entire record.

A claimant's education is distinct from his RFC. 20 C.F.R. § 416.920(a)(4)(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity and your[…] education[…] to see if you can make an adjustment to other work."). A claimant's RFC encompasses the physical or

mental limitations caused by their medically determinable impairments: "Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a). It is not a measure of the claimant's educational background. A claimant's education, though, is an assessment of their "actual educational abilities," not the functional abilities dictated by their impairments. 20 C.F.R. § 416.964(b).

This assessment considers the remoteness of the education, the skills and knowledge gained, and whether the claimant has used their education in a work or other setting. *Id*. Information an ALJ should consider in assessing the claimant's education background includes their own statements about their education and "other information about how much formal or informal education [they] may have had through [their] previous work, community projects, hobbies, and any other activities which might help you to work." 20 C.F.R. § 416.964(c). At no point does the applicable regulation direct consideration of a claimant's RFC. 20 C.F.R. § 416.964. Even though the regulation suggests that someone with a high school education can do semi-skilled or skilled work, this is true only "generally," *i.e.* it is not true in every case. 20 C.R.F. § 416.964(b)(4). Since the finding as to a claimant's educational background is separate from their RFC, the ALJ appropriately concluded that plaintiff's education level corresponded to the numerical grade level that he completed. *See 20 C.F.R. § 416.920(a)(4)(v)* (a claimant's education and residual functional capacity are among separate factors considered at the fifth step). The Court finds that substantial evidence supports the ALJ's conclusion.

### c.  The Plaintiff Identified a Significant Number of Jobs in the National Economy and Any Omissions are Harmless Error

Plaintiff alleges that the ALJ failed to determine the proper number of jobs plaintiff can engage in. *ECF No. 12 at 14*. The Commissioner argues that, even assuming arguendo that plaintiff is correct, there is no harm as the ALJ properly identified a significant number of jobs plaintiff can do. *ECF No. 14 at 4*. Plaintiff argues that kitchen helpers and day workers are exposed to more than just occasional interactions with coworkers or customers. *ECF No. 12 at 16-17*. Plaintiff argues that he can only work in

the category of laundry worker II, which would not leave enough opportunities for plaintiff. *Id. at 17*. The Court notes, however, that the DOT does not define regular social interaction as an element of these jobs. The ALJ also relied on expert testimony from a vocational expert, which amounts to substantial evidence supporting the ALJ's finding. Even if plaintiff is correct, the Court finds that the error is harmless because the ALJ identified a significant number of jobs.

Plaintiff also argues that the ALJ erred because the persuasive prior administrative medical finding from Kelly O'Neill, Ph.D. suggested he had additional social limitations. *ECF No. 12 at 11-14*. The ALJ found the opinions of the consultants, including Dr. O'Neil, only "partially persuasive." *AR at 46*. Plaintiff points to this District Court's recent holding that the limitation to "occasional interactions" does not, on its own, consider the limitation of "a well-spaced setting." *Pinon v. Kijakazi*, No.: 3:22-cv-00139-CSD, 2023 U.S. Dist. LEXIS 128187, *19-20 (D. Nev. July 25, 2023). The ALJ found plaintiff is limited to "occasionally interact" with others (AR 44) but did not address Dr. O'Neil's opinions on limitations to a well-spaced work setting. *See AR 141*. The Commissioner again argues that even assuming arguendo that plaintiff is correct, such omission did not result in any harm. Where an ALJ fails to account for a credited limitation, the error is harmless where that limitation would not preclude performance of the jobs identified at steps four or five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("Further, to the extent the ALJ's RFC finding erroneously omitted Stubbs– Danielson's postural limitations (only occasional balancing, stooping, and climbing of ramps and stairs), any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing.")

The kitchen helper and laundry worker positions contemplate no interaction with others. See DOT #361.684-014, Laundry Worker I, available at 1991 WL 672983 ("People: 8 - Taking Instructions-Helping N - Not Significant[…] Talking: Not Present - Activity or condition does not exist"); DOT #318.687-010, Kitchen Helper, available at 1991 WL 672755 (same). Even a limitation to only brief, casual encounters with the public and coworkers would not affect plaintiff's ability to perform these jobs

because the DOT shows that they do not require any social interaction.

The kitchen helper and laundry worker occupations constitute more than 120,000 jobs in the national economy, so substantial evidence supports the ALJ's conclusion that there were a significant number of jobs in the national economy that plaintiff could do. The Court thus finds that any error in failing to account for Dr. O'Neill's finding was harmless error.

### C. CONCLUSION

The ALJ reasonably concluded that plaintiff was not disabled within the meaning of the Social Security Act. Because substantial evidence supports this conclusion, the Court affirms the Commissioner's decision.

**IT IS ORDERED that:**

1. Plaintiff William O.'s *Motion to Remand* (ECF No. 12) is **DENIED**.

2. The Clerk of Court is DIRECTED to enter final judgment in favor of the Commissioner of Social Security.

DATED: September 22, 2025.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge